UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION, LINDA MCMAHON, in her capacity as Secretary of the United States Department of Education, MURRAY BESSETTE, in his capacity as Principal Deputy Assistant Secretary and Acting Assistant Secretary of Education, JENNIFER TODD, in her capacity as Director of the Division of Family Empowerment and Education Choice, LAVANA WEEMS, in her capacity as Supervisory Management Analyst,

Defendants.

No. 26 Civ. 06584 (AS)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' CROSS MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2695
*Attorney for Defendants*

JEFFREY OESTERICHER
Assistant United States Attorney
- Of Counsel -

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's Claims .......... 1

II. This Court Does Not Have Jurisdiction Under 20 U.S.C. § 1683 .......... 4

III. In the Alternative, the Government Is Entitled to Summary Judgment .......... 6

A. Defendants Observed All Procedures Required by Law (Counts I and II) .......... 6

B. The Agency's Actions Were Not Arbitrary and Capricious (Count III) .......... 8

C. No Further Notice and Comment Rulemaking Was Required (Count IV) and ED's Actions Were Not Contrary to Law (Count V) .......... 10

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Afterschool for Children and Teens (ACT) Now v. United States Dep't of Educ.*, No. 25 Civ. 15704, 2026 WL 1847100 (N.D. Ill. Jun. 26, 2026) .......... 2

*Almaklani v. Trump*, 444 F. Supp. 3d 425 (E.D.N.Y. 2020) .......... 10

*Atterbury v. U.S. Marshals Service*, 805 F.3d 398 (2d Cir. 2015) .......... 3, 4

*Bell v. New Jersey*, 461 U.S. 773 (1983) .......... 10

*Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656 (1985) .......... 10

*Bennett v. New Jersey*, 470 U.S. 632 (1985) .......... 2

*Board of Educ. for Silver Consolidated Schools v. McMahon*, 791 F. Supp. 3d 1272 (D.N.M. 2025) .......... 2

*Colaio v. Feinberg*, 262 F. Supp. 2d 273 (S.D.N.Y. 2003) .......... 8

*Comprehensive Comm. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305 (S.D.N.Y. 2012) .......... 10

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) .......... 2

*Fairfax Cnty. School Bd. v. McMahon*, 798 F. Supp. 3d 563 (E.D.V.A. 2025) .......... 4, 6

*FDA v. Wages & White Lion Invs. L.L.C.*, 604 U.S. 542 (2025) .......... 9

*Furlong v. Shalala*, 156 F.3d 384 (2d Cir. 1998) .......... 3

*Heckler v. Chaney*, 470 U.S. 821 (1985) .......... 9

*Instituto de Educacion Universal Corp. v. Riley*,
973 F. Supp. 95 (D.P.R. 1997) .......... 10

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. 1982) .......... 2

*New Jersey v. United States Dep't of Transp.*,
835 F. Supp. 3d 477 (S.D.N.Y. 2026) .......... 3

*New York v. National Science Foundation*,
793 F. Supp. 3d 562 (S.D.N.Y. 2025) .......... 4

*New York v. Trump*,
778 F. Supp. 3d 578 (S.D.N.Y. 2025) .......... 9

*NIH v. American Public Health Association*,
145 S. Ct. 2658 (2025) .......... 2

*NRDC v. Muszynski*,
268 F.3d 91 (2d Cir. 2001) .......... 10

*NYLAG v. DeVos*,
527 F. Supp. 3d 593 (S.D.N.Y. 2021) .......... 9

*Regents of the Univ. of California*,
591 U.S. 1 (2020) .......... 5, 8

*Rosati v. Mayorkas*,
691 F. Supp. 3d 597 (N.D.N.Y. 2023) .......... 10

*Widakuswara v. Lake*,
No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) .......... 3

**Statutes**

20 U.S.C. § 1226a-1 .......... 8, 9
20 U.S.C. § 1682 .......... 7
20 U.S.C. § 1683 .......... 4, 5

**Regulations**

2 C.F.R. § 200.208 .......... 6, 7, 8
34 C.F.R. § 75.236 .......... 2

## PRELIMINARY STATEMENT

This action is a funding dispute that belongs in the Court of Federal Claims. In FY 2026, ED made almost $15,000,000 in MSAP funding available to the grantees.[1] NYCPS wants more funding despite conceding that the grantees are not entitled to any specific funding amount and not disputing that Plaintiff had millions more in funds available to it in FY 2026 than it expended in FY 2024 or FY 2025. Further, the administrative record is clear: ED did not consider Title IX concerns when issuing the June 9 GANs. The sole source of any right to additional funds asserted by Plaintiff is the contract between ED and the grantees. Accordingly, the Court lacks subject matter jurisdiction under the Tucker Act and should dismiss this action.

In the alternative, the Court should grant the Government's motion for summary judgment. ED acted reasonably and in compliance with all legal obligations in issuing the June 9 GANs. As the administrative record establishes, ED considered Plaintiff's MSAP Annual Performance Reports, their 2025-26 school year budgets, and their FY 2025 carryover to determine the appropriate awards for FY 2026. This was a reasonable approach that complied with all legal obligations and resulted in Plaintiff having nearly the same amount of funding available as reflected in the initial GANs estimate.

## ARGUMENT

### I. The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's Claims

The parties agree that the Court of Federal Claims—not this Court—has jurisdiction over claims against the United States that are in "essence" contractual in nature, and that the Court should analyze the source of the right asserted and the type of relief sought in determining how to

[1] The Government incorporates by reference the defined terms contained in ECF No. 36 ("Gov't Br.").

characterize claims. *See* ECF No. 39 ("Pl.'s Opp.") at 7 (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. 1982)). Here, Plaintiff contests the amount of MSAP funding received by the grantees and the method of payment selected by ED. Pl.'s Opp. at 6 ("NYCPS challenges Defendants' determinations providing sharply reduced MSAP grant awards for FY2026 reflecting funding for only a truncated period of three months, and imposing a burdensome new reimbursement payment condition."). Notably, however, it is uncontested that the source of the grantees' right to MSAP funding is the GANs. *See generally* Pl.'s Opp. Nor could it be. Plaintiff has no right to MSAP funds without the GANs, which establish and govern the relationship. *See* 34 C.F.R. § 75.236 ("The grant obligates both the Federal Government and the grantee to the requirements that apply to the grant.").

Instead, Plaintiff takes issue with ED "attempt[ing] to convert this case into a breach of contract claim by characterizing the GANs as contracts and the regulations incorporated into the GANs as contractual terms and conditions." Pl.'s Opp. at 7. But the Supreme Court has recognized as much. *Bennett v. New Jersey*, 470 U.S. 632, 638-39 (1985) (noting that "many" federal grant programs operate "in the nature of a contract"); *see also NIH v. American Public Health Association*, 145 S. Ct. 2658, 2661 (2025) (per curiam) (treating grants as contracts for purposes of the Tucker Act) (citing *United States Dep't of Educ. v. California*, 604 U.S. 650 (2025)). "Grants are considered contracts because the grant recipient, 'as a condition of receiving the grant, freely gives its assurance that it will abide by the conditions of' the grant and its associated regulations." *Afterschool for Children and Teens (ACT) Now v. United States Dep't of Educ.*, No. 25 Civ. 15704, 2026 WL 1847100, at *6 (N.D. Ill. Jun. 26, 2026) (quoting *Bennett*, 470 U.S. at 638-39). Accordingly, the source of Plaintiff's claim is contractual—not statutory. *See Board of Educ. for Silver Consolidated Schools v. McMahon*, 791 F. Supp. 3d 1272, 1284-85 (D.N.M. 2025)

("Congress created a contractual scheme for allocating funds to the grantees. And those 'exchanges of promises—reflecting offer, acceptance, consideration, mutuality of intent, and action by an official with authority to bind the government—constitute government contracts for Tucker Act purposes.'") (quoting *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *3 (D.C. Cir. May 3, 2025))

In an attempt to evade the contractual nature of its claims, Plaintiff concedes that the GANs do not entitle the grantees to any funding amount, and Plaintiff disclaims entitlement to any annual amount of funds. Pl.'s Opp. at 7-8. Instead, Plaintiff characterizes its claim as alleging "that the Initial GANs set forth anticipated amounts that were expressly stated to be non-binding" and that it is challenging the "discrepancy between the Initial GANs' anticipated continuation grant amount for FY2026 and the actual June 9 GANs awards [as] arbitrary and capricious." *Id*. at 8. But even under this characterization the source of the right to MSAP funds remains the GANs—without which it would not be entitled to any funding—not the Administrative Procedure Act ("APA"). "The Second Circuit . . . has held . . . [that] '[t]he APA is merely a procedural vehicle for review of agency action; it does not confer a substantive right to be free from arbitrary agency action.' Because 'the APA is not itself a free-standing source of rights,' courts must look elsewhere for an 'independent source of rights' to satisfy the first prong of the *Megapulse* test." *New Jersey v. United States Dep't of Transp.*, 835 F. Supp. 3d 477, 508 (S.D.N.Y. 2026) (quoting *Furlong v. Shalala*, 156 F.3d 384, 394 (2d Cir. 1998) and *Atterbury v. U.S. Marshals Service*, 805 F.3d 398, 408 (2d Cir. 2015)). Accordingly, the only plausible source of right for Plaintiff's claim is the GANs.

As to the second *Megapulse* factor, NYCPS denies that its primary objective is to obtain more funds from ED. Pl.'s Opp. at 8. But it betrays its true intentions just two sentences later arguing that "an order that Defendants make an appropriate award based on permissible factors

and *consistent with their prior practices as to amount and conditions*, is not an order directing payment." *Id*. (emphasis added). Further, Plaintiff admits that its claim concerns the "discrepancy" between the amount of funding it anticipated and the amount it received. *Id*. While Plaintiff artfully drafts its requested relief to seek vacatur and avoids asking the Court to order a specific funding award, it is abundantly clear that Plaintiff's primary objective is not only to obtain more money from ED but to obtain the specific amount set forth in the GANs. Further, NYCPS cites no authority to support its position that its TRO request to set aside a specific amount of funds ($11,754,296) for the grantees "so that a remedy will remain available in the event that Plaintiff prevails on its claims," ECF No. 23 at 9, should not be used as evidence of their monetary aim in bringing this lawsuit. *See New York v. National Science Foundation*, 793 F. Supp. 3d 562, 583 (S.D.N.Y. 2025) (finding that plaintiffs "primarily asserted a right to payment of the funds promised in the grant awards" based, in part, on plaintiffs' preliminary injunction brief).

## II. This Court Does Not Have Jurisdiction Under 20 U.S.C. § 1683

Plaintiff's assertion that this Court "has jurisdiction over this matter under the APA pursuant to 20 U.S.C. § 1683," Pl's. Opp. at 8, is mistaken. As a threshold matter, as discussed in the Government's opening brief, *see* Gov't Br. at 16, but unaddressed by Plaintiff, Section 1683 only confers jurisdiction when the action is "not otherwise subject to judicial review." 20 U.S.C § 1683. Here, the Court lacks jurisdiction because the claims are subject to review in the Court of Federal Claims. *See* *See Fairfax Cnty. School Bd. v. McMahon*, 798 F. Supp. 3d 563, 568-69 (E.D.V.A. 2025) (*appeal docketed,* No. 25-2087 (4th Cir. Sept. 11, 2025), and *Arlington School Bd. v. McMahon*, No. 25-2107 (4th Cir. Sept. 16, 2025) (finding plaintiffs' reliance on 20 U.S.C. § 1683 to be "unavailing" as the Tucker Act provided for judicial review).

Moreover, Plaintiff does not contest that "[i]t is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it

took the action." *See DHS v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (internal citations and quotations omitted). Here, the administrative record is clear: "When deciding on continuation awards and their respective funding amounts for the GANs issued on June 9, 2026, the Department did not consider any alleged or actual civil rights violations or civil rights compliance concerns, including those regarding Title IX." Bessette Decl. ¶ 8. Accordingly, ED did not invoke Title IX concerns in making the continuation awards and this Court does not have jurisdiction under 20 U.S.C § 1683, which confers jurisdiction when the complained of action was taken pursuant to Title IX.

Section 1683 also does not apply because ED continued the grants and funding to the grantees. Todd Decl. ¶¶ 4-7. Plaintiff does not contest that Section 1683 only applies where the government terminates or refuses to grant or continue assistance to a grantee. *See* Pl.'s Opp. at 9-11. While Plaintiff claims that there was a "truncation of funding" and that ED has "continued to deny Plaintiff[ ] access to the expected full year FY2026 grant award that would otherwise have been provided in the absence of Defendants' prior violation of Title IX last September," Pl.'s Opp. at 10, those arguments are unavailing. As Plaintiff now concedes, it was never entitled to any specific award amount. Pl.'s Opp. at 7-8. Accordingly, there is no "truncation" or denial of funds. Further, as discussed in the Government's opening brief, it is incorrect to state that the Government only issued an award for a portion of FY 26. *See* Gov't Br. at 7 n.2, 19.[2]

Plaintiff's claim that ED's funding determination must have been based on its prior Title IX concerns because Defendants have "offered no alternate justification" is also incorrect. *See* Pl.'s

[2] Plaintiff claims that the administrative record makes "apparent" that absent the September 2025 non-continuation decision the grantees would have "received full year funding for FY2026 effective October 1, 2025." Pl.'s Opp. at 10. Again, as discussed *supra*, the grants received a funding award for the entire FY. Any assertion that the grantees would have received more funding if the award had been issued in September 2025 is speculative.

Opp. at 10. The administrative record demonstrates that ED considered Plaintiff's MSAP Annual Performance Reports, their 2025-26 school year budgets, and their substantial FY 2025 carryover to determine the appropriate awards for FY 2026. *See* Gov't Br. at 5-9. Likewise, contrary to Plaintiff's contention, Pl.'s Opp. at 10, the fact that ED made the awards "under protest" does not evidence that Title IX concerns, as opposed to the reasons shown by the administrative record, were the basis for the funding determination. Indeed, ED issued a non-discrimination determination for each of the grantees. USDOE-Continuation_001077-81.

Similarly, Section 1683 does not provide the Court with jurisdiction to review ED's discretionary determination to place the grantees on reimbursement pay status. Reimbursement pay status does not implicate grant continuation or the amount of funds available to the grantees. It merely "requires grantees to spend their own funds first and then request reimbursement while providing appropriate documentation." Todd Decl. ¶ 9. Because Section 1683 only confers jurisdiction when an action is taken pursuant to Title IX—which did not occur here—and the action results in termination or refusal to continue assistance to the grantee—which is not implicated by reimbursement pay status—the Court lacks jurisdiction. Plaintiff cites no authority to the contrary. *See* Pl.'s Opp. at 10-11.[3]

## III. In the Alternative, the Government Is Entitled to Summary Judgment

### A. Defendants Observed All Procedures Required by Law (Counts I and II)

The administrative record unambiguously reflects that the $2,999,999 figure in the initial GANs was a non-binding estimate, and that ED did not consider any civil rights concerns in

---

[3] Plaintiff highlights that 2 C.F.R. § 200.208—the provision ED allegedly violated by placing the grantees on reimbursement pay status—is incorporated as a term and condition of the June 9 GANs. Pl.'s Opp. at 14-15. This again demonstrates that Plaintiff's claim is a disguised breach of contract claim subject to the Tucker Act. *See Fairfax Cnty. School Bd.*, 798 F. Supp. 3d at 570-71 (E.D.V.A. 2025) (dismissing reimbursement pay status claim for lack of jurisdiction).

determining the June 9 award. *See* Gov't Br. at 18. Because Title IX procedures apply only to the termination or refusal to grant or continue financial assistance in order to enforce Title IX compliance, 20 U.S.C. § 1682, those procedures are wholly inapplicable here, *see* Gov't Br. at 18.

Plaintiff does not dispute either of these crucial facts. Instead, Plaintiff argues that the vacated September 2025 non-continuation determination caused the "reduced" June 9 award because ED accounted for carryover funding available to Plaintiff under the November 20, 2025 Consent Order. *See* Pl.'s Opp. at 11-12. But the decision to allow Plaintiff to use carryover funding to avoid further litigation on Plaintiff's preliminary injunction motion was not a Title IX determination, and its function was to allow Plaintiff access to funds. The logical conclusion of Plaintiff's argument is that any decision other than one to issue GANs in the amount of $2,999,999 is a violation of Title IX's procedures because the prior GANs were once challenged on that ground. There is nothing in the Title IX statute to suggest that Title IX's procedures are so broadly applicable, and Plaintiff's do not cite a single case in support of that proposition. *See id.*

Further, ED's decision to account for Plaintiff's significant carryover funding in determining the award for the entire fiscal year was permitted under the regulations incorporated into the GANs and was reasonable. Indeed, it resulted in NYCPS having more MSAP funding in FY 26 than Plaintiff expended in either of the prior two fiscal years. *See* Gov't Br. at 8.

As to Count II, Plaintiff argues that placing the grantees on reimbursement pay status violated 2 C.F.R. § 200.208 because ED purportedly failed to perform a four-factor analysis or provide notice to the grantees required by that provision. Pl.'s Opp. at 13-17. But Plaintiff concedes that all the regulations it cites in support of its position are terms and conditions of the GANs. *Id.* Accordingly, this dispute is contractual and subject to the Tucker Act. Further, by statute the Secretary has discretion to make grant payments by way of reimbursement and there is no

reference to any statutorily required procedures. 20 U.S.C. § 1226a-1.[4] Accordingly, ED observed all procedures required by law when issuing the June 9 GANs.

### B. The Agency's Actions Were Not Arbitrary and Capricious (Count III)

Nor were the June 9 GANs arbitrary or capricious. Plaintiff does not dispute that ED made nearly $15,000,000 available in FY 2026 or that the grantees had more funding available to them in FY 2026 than they did in FY 2024 or FY 2025. *See generally* Pl.'s Opp. Plaintiff also concedes that the grantees were not entitled to a specific funding amount—let alone $2,999,999 each. *Id*. at 7-8, 12. Accordingly, Plaintiff's characterizations of the award as a grant "reduction" and as "truncated" are mistaken. *See id.* at 1, 17. Rather, ED acted reasonably and within its authority in determining the appropriate amount of funding for FY 2026 based on MSAP Annual Performance Reports submitted by Plaintiff, Plaintiff's 2025-26 school year budgets, the amount of FY 2025 carryover available to the grantees, and the assumption that the grantees would use the maximum amount of expected funds during the period of FY 2026 not covered by Plaintiff's school year budgets. *See* Gov't Br. at 21-25.

Again, Plaintiff's argument that ED failed to provide "any rationale" for its funding methodology is wrong. *See* Pl.'s Opp. at 19. ED was entitled to consider Plaintiff's large carryover when determining the amount of funding for the fiscal year, especially given the grantees' failure to fully expend the amounts awarded in FY 2024 and FY 2025. *See* 34 C.F.R. § 75.253(e)(2)(ii). The methodology used was a reasonable way to account for that significant carryover, which is all that is required by the APA. *See Colaio v. Feinberg*, 262 F. Supp. 2d 273, 289 (S.D.N.Y. 2003) ("The court may neither weigh alternatives available to the agency and then determine which is the more reasonable nor substitute its judgment for that of the agency." (cleaned up)).

---

[4] While ED is not bound by 2 C.F.R. § 200.208, the Department has cited to it with regard to the imposition of specific conditions unrelated to method of payment.

Nor is the manner in which ED accounted for Plaintiff's carryover funding a "change in position," as Plaintiff suggests. *See* Pl.'s Opp. at 20. This is not a "change in position" because there was no change in existing policy. "[F]or an agency position to constitute a 'policy' within the meaning of the change-in-position doctrine, it must typically have been set forth in some 'formal' manner, such as a regulation, a guidance memorandum, or an agency enforcement action." *New York v. Trump*, 778 F. Supp. 3d 578, 596 (S.D.N.Y. 2025). But Plaintiffs do not identify—as they must—any "pre-existing policy expressed in a guidance document or in some other formal fashion that was altered by" the June 9 GANs. *See id.* Nor did the agency go "back on any commitments made in the guidance it provided" before making its funding decision because the relevant regulations "left the agency broad discretion to decide" how to account for carryover funding. *FDA v. Wages & White Lion Invs. L.L.C.*, 604 U.S. 542, 571 (2025). Just because Plaintiff expresses a "difference in view" as to how carryover funding should be accounted does not render the GANs arbitrary and capricious. *See NYLAG v. DeVos*, 527 F. Supp. 3d 593, 604 (S.D.N.Y. 2021).

Plaintiff's APA claim as to reimbursement pay status fails as a matter of law. ED's decision to make payment by reimbursement does not restrict access to funds and is not susceptible to review under the APA because there is "no meaningful standard against which to judge the agency's exercise of discretion" contained in the statute. *Heckler v. Chaney,* 470 U.S. 821, 830 (1985); *see* 20 U.S.C. § 1226a-1 (providing that payments can be made to grantees "by way of reimbursement . . . as the Secretary may determine"). Plaintiff does not offer any standard by which this Court could review the propriety of its placement on reimbursement pay status, nor could it—the statute simply provides a menu of options that the Secretary may choose from in determining how to make payments under grants or contracts. *Id.*

Finally, the cases cited by Plaintiff are inapposite. *Bennett* and *Bell* have nothing to do with reimbursement pay status or the APA, and instead concern efforts by the Government to recoup misused Title I funds from states. *See Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 658 (1985); *Bell v. New Jersey*, 461 U.S. 773, 791 (1983). And *Instituto de Educacion Universal Corp. v. Riley* acknowledged ED's considerable discretion in this area. *See* 973 F. Supp. 95, 97 (D.P.R. 1997) ("It is within the Department's discretion to determine the method of providing funds to eligible institutions."). The case does not opine on any limits on that discretion, holding that the particular reasons for placement on reimbursement status offered by ED in that litigation had not been rebutted by the grantee.

### C. No Further Notice and Comment Rulemaking Was Required (Count IV) and ED's Actions Were Not Contrary to Law (Count V)

Plaintiff's assertion that ED must have relied on the Policy Memo and the EOs they cite is pure conjecture. *See* Pl.'s Br. at 22-23. As the Government explained in its opening brief, none of these documents appear in the administrative record because ED did not rely on them to determine the June 9 funding award. *See* Gov't Br. at 25-27. Under the APA, the court's review is "narrow" and "limited to examining the administrative record." *NRDC v. Muszynski*, 268 F.3d 91, 97 (2d Cir. 2001). "Absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Almaklani v. Trump*, 444 F. Supp. 3d 425, 431 (E.D.N.Y. 2020) (alteration omitted); *see also Comprehensive Comm. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (same). Plaintiff's "mere speculation" that ED considered the Policy Memo and the cited EOs in issuing the GANs is insufficient to overcome that presumption of regularity. *See Rosati v. Mayorkas*, 691 F. Supp. 3d 597, 603 n.4 (N.D.N.Y. 2023). Because neither the Policy Memo nor the EOs were considered in determining the amount

of the June 9 GANs and fall outside of the administrative record before this Court, the GANs cannot be vacated on that basis.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' cross-motion to dismiss or, in the alternative, for summary judgment.

Dated: New York, New York
September 18, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: */s/ Jeffrey Oestericher*
JEFFREY S. OESTERICHER
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2695

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation. As measured by the word processing system used to prepare it, this memorandum contains 3,500 words.

*/s/ Jeffrey Oestericher*
Assistant United States Attorney